GIBSON, DUNN & CRUTCHER LLP
THEANE EVANGELIS, SBN 243570
TEvangelis@gibsondunn.com
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7420

BENJAMIN WAGNER, SBN 163581
BWagner@gibsondunn.com
310 University Avenue
Palo Alto, CA 94301-1744
Telephone: 650.849.5395
Facsimile: 650.849.5095

RACHEL S. BRASS, SBN 219301
RBrass@gibsondunn.com
JULIAN W. KLEINBRODT, SBN 302085
JKleinbrodt@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: 415.393.8293
Facsimile: 415.393.8306

*Attorneys for Defendant*
*Albertsons Companies, Inc. and*
*Albertsons Safeway LLC*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

JOEL CASCIANI, PAOLA HARTMAN, TRAVIS MCMICHAEL, ERNEST SCOGGAN, and CRYSTAL TURNBOUGH, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

KALIBRATE PRICING INC., 7-ELEVEN, INC., SPEEDWAY LLC, EG RETAIL (AMERICA), LLC, BP PRODUCTS NORTH AMERICA INC., TRAVELCENTERS OF AMERICA INC., TA OPERATING LLC, WALMART INC., CIRCLE K STORES INC., TMC FRANCHISE CORPORATION, ALBERTSONS COMPANIES, INC., ALBERTSONS SAFEWAY LLC, and DOE CORPORATIONS 1-10,

Defendants.

Case No. 2:26-cv-02211-DAD-CSK

**DEFENDANTS ALBERTSONS COMPANIES, INC.'S AND ALBERTSONS SAFEWAY LLC'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OF THE CLAIMS OF PLAINTIFFS CRYSTAL TURNBOUGH, PAOLA HARTMAN, AND TRAVIS MCMICHAEL AND TO STAY PROCEEDINGS**

| | |
|---|---|
| Hearing Date: | To be set |
| Time: | To be set |
| Place: | Courtroom 4, 15th Floor |
| Judge: | Hon. Dale A. Drozd |
| Action Filed: | June 22, 2026 |

## NOTICE OF MOTION

**TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:** PLEASE TAKE NOTICE that on such time as the Court shall order, in Courtroom 4 of the above-titled Court, Defendants Albertsons Companies, Inc. and Albertsons Safeway LLC (together, "Albertsons") will and hereby make the following motion.

Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–16, and specifically 9 U.S.C. §§ 3 and 4, Albertsons respectfully moves this Court for an order (1) compelling Plaintiffs Crystal Turnbough, Paola Hartman, and Travis McMichael (the "Member Plaintiffs") to arbitrate their claims against Albertsons on an individual basis in accordance with the Albertsons Terms of Use and Dispute Resolution Terms to which each agreed, and (2) staying the Member Plaintiffs' claims against Albertsons pending completion of arbitration. In the alternative, should the Court find a genuine dispute of material fact as to the formation of any Member Plaintiff's agreement to arbitrate, Albertsons requests that the Court proceed promptly to trial of that issue under 9 U.S.C. § 4 and hold this motion in abeyance pending its resolution. Albertsons further requests that the Court decide this motion before ruling on the concurrently filed motion to dismiss as to the Member Plaintiffs' claims against Albertsons. As detailed in the Memorandum of Points and Authorities filed concurrently herewith, this motion is made on the grounds that each Member Plaintiff formed a binding agreement to arbitrate this dispute with Albertsons.

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support, the concurrently filed Declarations of Kevin Michael and Richa Gupta and the exhibits thereto, all pleadings and papers on file in this action, and upon such oral argument as may be heard by the Court.

## CERTIFICATION OF MEET AND CONFER

Albertsons requested from Plaintiffs' counsel information sufficient to identify the named Plaintiffs and to ascertain whether any were subject to such an agreement. Plaintiffs refused to provide reciprocal information about the Plaintiffs unless all defendants agreed to conduct early discovery.

Pursuant to Section I.C of the Court's Standing Order in Civil Cases, the undersigned certifies that counsel for Albertsons met and conferred with counsel for Plaintiffs regarding the substance of

this motion and potential resolution by videoconference on October 22, 2026, and requested that Plaintiffs stipulate to arbitration of the Member Plaintiffs' claims against Albertsons. Plaintiffs declined. The parties were unable to resolve the issues presented by the motion, and meet and confer efforts have thus been exhausted.

Dated: October 23, 2026

Respectfully submitted,

/s/ *Theane Evangelis*

**GIBSON, DUNN & CRUTCHER LLP**
THEANE EVANGELIS, SBN 243570
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:213.229.7000
Facsimile: 213.229.7420
TEvangelis@gibsondunn.com

BENJAMIN WAGNER, SBN 163581
310 University Avenue
Palo Alto, CA 94301-1744
Telephone:650.849.5395
Facsimile: 650.849.5095
BWagner@gibsondunn.com

RACHEL S. BRASS, SBN 219301
JULIAN W. KLEINBRODT, SBN 302085
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone:415.393.8293
Facsimile: 415.393.8306
RBrass@gibsondunn.com
JKleinbrodt@gibsondunn.com

*Attorneys for Defendant Albertsons Companies, Inc. and Albertsons Safeway LLC*

## TABLE OF CONTENTS

**I. INTRODUCTION .......... 1**

**II. BACKGROUND .......... 2**

A. The *for U* Program and Albertsons' Terms of Use. .......... 2

1. Crystal Turnbough. .......... 5

2. Paola Hartman. .......... 6

3. Travis McMichael. .......... 6

B. Plaintiffs Filed This Class Action Rather Than Arbitrate. .......... 7

**III. LEGAL STANDARD .......... 7**

**IV. ARGUMENT .......... 7**

A. Each Member Plaintiff Formed a Binding Agreement to Arbitrate with Albertsons. .......... 8

1. Each Member Plaintiff received conspicuous notice of, and affirmatively assented to, the Terms when enrolling in *for U*. .......... 8

2. The Member Plaintiffs' assent extends to the May 2024 and May 2025 Terms and their Arbitration Provision. .......... 11

3. *Tempest* and *Sapan* do not counsel a different result. .......... 12

B. The Arbitrator Must Decide Any Remaining Threshold Questions. .......... 14

C. The Arbitration Provision Is Valid and Enforceable. .......... 16

**V. CONCLUSION .......... 18**

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Adibzadeh v. Best Buy Co.*,
2021 WL 4440313 (N.D. Cal. Mar. 2, 2021) ... 16

*Armendariz v. Found. Health Psychcare Servs.*,
24 Cal. 4th 83 (2000) ... 17

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ... 7

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) ... 15

*Babaeva v. J. Crew Grp., LLC*,
2023 WL 7346079 (N.D. Cal. Nov. 6, 2023) ... 12

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ... 8, 9

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ... 14

*Caremark, LLC v. Chickasaw Nation*,
43 F.4th 1021 (9th Cir. 2022) ... 7, 14

*Chabolla v. ClassPass Inc.*,
129 F.4th 1147 (9th Cir. 2025) ... 8

*Circuit City Stores, Inc. v. Ahmed*,
283 F.3d 1198 (9th Cir. 2002) ... 16

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) ... 7

*Dohrmann v. Intuit, Inc.*,
823 F. App'x 482 (9th Cir. 2020) ... 9

*Ehrmantraut v. Safeway Inc.*,
732 F. Supp. 3d 1030 (D. Ariz. 2024) ... 1, 9

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018) ... 7

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024) ... 10, 11, 12

*Hansen v. LMB Mortg. Servs., Inc.*,
1 F.4th 667 (9th Cir. 2021) ... 7, 8

*Heckman v. Live Nation Ent., Inc.*,
120 F.4th 670 (9th Cir. 2024) ........ 17

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) ........ 7, 14

*Johnson v. Walmart Inc.*,
57 F.4th 677 (9th Cir. 2023) ........ 16

*Kaplan v. Athletic Media Co.*,
705 F. Supp. 3d 992 (N.D. Cal. 2023) ........ 10

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) ........ 1, 9

*Knutson v. Sirius XM Radio Inc.*,
771 F.3d 559 (9th Cir. 2014) ........ 7

*Lim v. TForce Logistics, LLC*,
8 F.4th 992 (9th Cir. 2021) ........ 7

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*,
89 Cal. App. 4th 1042 (2001) ........ 10

*Maynez v. Walmart, Inc.*,
479 F. Supp. 3d 890 (C.D. Cal. 2020) ........ 10

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017) ........ 10

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016) ........ 14, 16

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ........ 15

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ........ 8, 11

*Norcia v. Samsung Telecomms. Am., LLC*,
845 F.3d 1279 (9th Cir. 2017) ........ 8

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ........ 1, 8, 9, 10

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) ........ 7, 9, 14

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
55 Cal. 4th 223 (2012) ........ 16

*Ramirez v. Charter Commc'ns, Inc.*,
16 Cal. 5th 478 (2024) ........ 17

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63 (2010) ....................................................................................................... 14

*Rubio v. Aarons LLC*,
2024 WL 4904512 (E.D. Cal. Nov. 27, 2024) .................................................................. 16

*Sadlock v. Walt Disney Co.*,
2023 WL 4869245 (N.D. Cal. July 31, 2023) ................................................................... 12

*Sanchez v. Valencia Holding Co.*,
61 Cal. 4th 899 (2015) ..................................................................................................... 17

*Sapan v. Safeway, Inc.*,
2025 WL 2494275 (N.D. Cal. Aug. 29, 2025) .............................................................. 12, 13

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999) ............................................................................................. 15

*Smith v. Spizzirri*,
601 U.S. 472 (2024) ..................................................................................................... 17, 18

*Tempest v. Safeway, Inc.*,
2025 WL 1953465 (N.D. Cal. July 16, 2025) ............................................................... 12, 13

*Tompkins v. 23andMe, Inc.*,
840 F.3d 1016 (9th Cir. 2016) ........................................................................................... 17

*In re Uber Techs., Inc.*,
2019 WL 6317770 (C.D. Cal. Aug. 19, 2019) ................................................................... 12

*West v. Uber Techs., Inc.*,
2018 WL 5848903 (C.D. Cal. Sept. 5, 2018) ..................................................................... 12

*Windsor Mills, Inc. v. Collins & Aikman Corp.*,
25 Cal. App. 3d 987 (1972) ................................................................................................ 11

**Statutes**

9 U.S.C. § 2 ........................................................................................................................ 7

9 U.S.C. § 3 ...................................................................................................................... 17

9 U.S.C. § 4 .................................................................................................................. 8, 17

Cal. Civ. Code § 1589 ........................................................................................................ 11

## I. INTRODUCTION

Plaintiffs allege that several retail fuel sellers conspired with one another and Knowledge Support Systems, Inc. ("Kalibrate") to inflate retail gasoline prices in California. Although those claims fail as a matter of law, three of the five plaintiffs—Crystal Turnbough, Paola Hartman, and Travis McMichael (the "Member Plaintiffs")—agreed with Albertsons Companies to resolve disputes like this one in individual arbitration. Each is a member of an Albertsons Companies' "*for U*" loyalty program. And each enrolled in that program subject to a clear, disclosed agreement—displayed in plain words beside a highlighted hyperlink—to arbitrate disputes under Albertsons Companies' Terms of Use.

The Terms of Use are unambiguous. They call for the enrollee's **ATTENTION** and in bolded, capitalized text explain that enrollees are signing an agreement that contains an arbitration provision. Each plaintiff assented to those terms. Although they could have opted out when they signed up or when Albertsons Companies updated its terms in 2024 and 2025—they chose not to do so and instead continued to use their loyalty accounts at Albertsons Companies' fuel centers and supermarkets after the Terms updated. This is the kind of conspicuous notice of, and affirmative assent to, an agreement to arbitrate that the Ninth Circuit enforces as a matter of course. *See Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515–17 (9th Cir. 2023); *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1021–22 (9th Cir. 2024).

This dispute falls well within the agreed-upon arbitration provision's broad scope. The Dispute Resolution Terms specify that "all claims arising from or related to" Member Plaintiffs' accounts, purchases from Albertsons, and "any aspect of [their] relationship or interactions with the company" must be resolved by arbitration. Michael Decl. Ex. B at 39 (capitalization omitted). That comfortably encompasses Member Plaintiffs' claims, which allege that they paid too much for gas when purchasing from the defendant retailers—including Albertsons. Other courts have enforced Albertsons' arbitration provision under analogous circumstances. *See Ehrmantraut v. Safeway Inc.*, 732 F. Supp. 3d 1030, 1036–38 (D. Ariz. 2024). This Court should do the same.

## II. BACKGROUND

Albertsons Companies through operating subsidiaries, operates (a) grocery stores throughout California under the banners Albertsons, Safeway, Vons, Pavilions, and Adronico's, and (b) fuel centers adjacent to many of the Safeway and Vons grocery stores under the banners Safeway, Safeway Express, Vons, and Vons Express. Kalibrate licenses fuel-pricing software to retail fuel sellers. Plaintiffs allege that Kalibrate's software enabled competing fuel retailers to coordinate retail gasoline prices in California in violation of California's Cartwright Act and Unfair Competition Law. But three of those plaintiffs—Ms. Turnbough, Ms. Hartman and Mr. McMichael—enrolled in an Albertsons Companies' *for U* loyalty program, purchased gas and groceries from Albertsons Companies' fuel centers and grocery stores, and agreed to resolve their claims arising from those purchases through binding arbitration.

### A. The *for U* Program and Albertsons' Terms of Use.

Albertsons Companies offers a free loyalty program under each of its banners: "Safeway *for U*," "Vons *for U*," "Albertsons *for U*," and so on. Declaration of Kevin Michael ("Michael Decl.") ¶¶ 6–8. Members receive rewards from making purchases at Albertsons Companies' grocery stores, and they can redeem their rewards by way of discounts on fuel at participating Albertsons Companies' fuel stations. *Id.* ¶ 7–8. Members obtain those benefits by identifying their account at the pump—by entering the phone number associated with the account or using the One Touch Fuel feature in the Albertsons Companies' mobile application. *Id.* ¶ 9.

Customers may enroll in *for U* in several ways, including by creating an account in a mobile application or through the web. *Id.* ¶ 7. In any medium, an enrolling customer must accept Albertsons Companies' Terms of Use. *Id.* ¶ 10. A preliminary registration screen notifies the customer that "[b]y [creating an account], you agree to the Terms of Use and Privacy Policy." Declaration of Richa Gupta ("Gupta Decl.") ¶¶ 11–12 & Ex. A. It then provides a blue, underlined hyperlink to Albertsons Companies' "Terms of Use" that, when tapped, opened the full text of the Terms then in effect. *Id.* ¶¶ 12 & Ex. A.

The current Albertsons Companies Terms of Use begin with a bolded, capitalized notice that they contain a mandatory arbitration provision:

ATTENTION: THESE TERMS OF USE CONTAIN A MANDATORY ARBITRATION PROVISION THAT, AS FURTHER ADDRESSED IN SECTION 24 BELOW AND OUR DISPUTE RESOLUTION TERMS REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES. THIS MEANS THAT YOU AND THE COMPANY (AS DEFINED BELOW) ARE EACH GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT OR IN CLASS ACTIONS OF ANY KIND. IN ARBITRATION, THERE IS NO JUDGE OR JURY.

*Id.* Ex. B at 2.

The arbitration provision itself is set out in Section 24 of the Terms of Use. Also in capitalized font, it says:

## 24. Binding Individual Arbitration; Class-Action Waiver.

ALL CLAIMS ARISING FROM OR RELATED TO YOUR ACCOUNT, ACCESS TO OR USE OF THE COMPANY'S SERVICES, PURCHASES FROM THE COMPANY; THE USE OF YOUR INFORMATION BY OR FOR THE COMPANY, ANY ASPECT OF YOUR RELATIONSHIP OR INTERACTIONS WITH THE COMPANY ARE SUBJECT TO THESE DISPUTE RESOLUTION TERMS, UNLESS YOU OPT OUT OR ANOTHER EXCEPTION APPLIES. THESE DISPUTE RESOLUTION TERMS CONTAIN PROCEDURES THAT APPLY TO MASS ARBITRATION.

WITH LIMITED EXCEPTIONS YOU AND THE COMPANY MAY NOT SUE IN COURT, HAVE A TRIAL BY JURY, OR PARTICIPATE IN A CLASS ACTION. YOU AND THE COMPANY AGREE THAT ARBITRATION WILL BE SOLELY ON AN INDIVIDUAL BASIS AND NOT AS A CLASS ARBITRATION, CLASS ACTION, OR ANY OTHER KIND OF REPRESENTATIVE PROCEEDING, UNLESS OTHERWISE PROVIDED IN THESE TERMS. THE COMPANY AND YOU ARE EACH WAIVING THE RIGHT TO TRIAL BY A JURY.

FOLLOW THE INSTRUCTIONS IN THE DISPUTE RESOLUTION TERMS IF YOU WISH TO OPT OUT OF THE REQUIREMENT TO ARBITRATE ON AN INDIVIDUAL BASIS.

*Id.* Ex. B at 17; *see also id.* at 38 (Dispute Resolution Terms); *id.* at 2 (defining "Company" to include Albertsons Companies, Inc. and its subsidiaries, affiliates, and "banners," including Safeway). The Terms of Use give members the right to opt out of arbitration by submitting written notice or an online form "within 30 days of [the member's] first purchase from the Company after" the effective date of the Terms. *Id.* at 45.

The Terms of Use then elaborate on the specific manner in which arbitration will be administered. It memorializes an agreement that the Federal Arbitration Act governs and subjects disputes to

the rules laid out by the American Arbitration Association ("AAA") under its Consumer Arbitration Rules (for consumer plaintiffs), *id.* at 41–42, providing that "the arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this agreement to arbitrate," *id.* The parties agree to attempt in good faith to resolve any claim informally for 45 days before arbitration is commenced, *id.* at 39–40, that Albertsons will pay any arbitration filing fee in excess of the fee for filing a lawsuit, *id.* at 42, and that the arbitrator may "award legal or equitable remedies that are individual to you or the Company," *id.* at 41. The parties also agree to specific procedures for the coordinated administration of mass arbitrations that preserve each claimant's right to an individual determination of her own claim, do not bind any claimant to the result of another claimant's arbitration, and may be declined by opting out. *Id.* at 43–45.

As stated in the Terms of Use, Albertsons Companies have at all relevant times reserved its right to update the Terms and provided that a member's continued use of her account or of Albertsons Companies' services after an update constitutes acceptance of the updated Terms. *Id.* ¶¶ 29–31 & Exs. A, B, E, F. For example, the Terms in effect from November 8, 2022 to May 6, 2024 provided that Albertsons Companies "reserve[s] the right to update and/or modify these Terms at any time," that "[a]ny modification will be effective upon posting of the updated Terms," and that continued use following any modification "constitute[] your acceptance of such modified Terms." *Id.* Ex. E at 4. The Terms in effect today are substantively similar. *Id.* Ex. B at 4.

Enrollees receive notifications of the Terms of Use's arbitration provision—including all changes thereto. When Albertsons Companies updated its terms in May 2024, for example, it sent every *for U* member an email with the subject line "We've Updated our Terms of Use" (the "Notice Email"). *Id.* ¶ 14 & Ex. D. The body of the Notice Email stated that the updated Terms "apply to new customers immediately and are effective from May 8, 2024 for our continuing customers," that the Terms "contain important information about your relationship with us, including that disputes between us will be arbitrated, instead of class actions or jury trials," and that "[w]e encourage you to regularly review our Terms of Use." *Id.* Ex. D. Immediately below that text appeared a prominent button labeled "View

Terms of Use," which linked directly to the May 2024 Terms. *Id.* Albertsons Companies' email platform records, for each message sent, whether the message was delivered and whether the recipient opened it or clicked a link within it. *Id.* ¶ 19. Each Member Plaintiff Agreed to the Terms.

The First Amended Complaint ("FAC") offers almost no information about the named Plaintiffs, and nearly no information about where each purchases fuel or groceries. To determine whether any of the Plaintiffs had *for U* loyalty accounts, for the purpose of knowing whether there was an agreement to arbitrate, Albertsons Companies requested from Plaintiffs' counsel information sufficient to identify the named Plaintiffs. Even though Albertsons Companies provided Plaintiffs' counsel corporate information about Albertsons Companies, Plaintiffs' counsel refused to provide the necessary identification information about the Plaintiffs unless all defendants agreed to conduct early discovery. As a result, Albertsons Companies has identified the following information about Member Plaintiffs through its own efforts, but it reserves the right to seek to compel arbitration from other individuals if further information comes to light indicating that they are also subject to arbitration agreements.[1]

**1. Crystal Turnbough.**

Albertsons Companies' records reflect a *for U* account under the name Crystal Turnbough associated with her telephone number and email address. Michael Decl. ¶ 38. The account was created on or about December 7, 2017. *Id.* She has had an online account since at least May 6, 2024, as she received the email update about the change in Terms. *Id.* ¶ 21. To create the account, Ms. Turnbough would have tapped "Continue" on a screen that stated, immediately below that button, "By creating an account, you acknowledge you . . . have read and agree to our Terms of Use, including understanding that disputes will be arbitrated," with "Terms of Use" hyperlinked to the Terms then in effect. Gupta Decl. ¶¶ 11–12 & Ex. A. The December 2017 Terms contained a change-of-terms clause in the initial Terms Section. Michael Decl. Ex. F.

The Notice Email was delivered to the email address on Ms. Turnbough's account on May 8, 2024. Michael Decl. ¶ 21. The first time Ms. Turnbough made a purchase after the May 2024 Update

[1] To the extent the Court believes there is any ambiguity as to Member Plaintiffs' assent, it should compel Plaintiffs to respond to discovery targeted at determining whether Member Plaintiffs assented to arbitrate their claims. All other gateway questions are delegated to the arbitrator. *See infra* Section IV.B.

using her *for U* account was May 10, 2024. *Id.* ¶ 38. The first time she made a purchase after the May 2025 Update using her *for U* account was May 19, 2025. *Id.* Using her *for U* account, she purchased fuel from a Safeway in Pleasanton, CA on July 2, 2022. *Id.* Since the May 2025 Update, she has made about 50 purchases using her *for U* account, including one purchase after the Complaint was filed. *Id.* Albertsons Companies has no record of any arbitration opt-out from Ms. Turnbough. *Id.* ¶ 36.

**2. Paola Hartman.**

Albertsons Companies' records reflect a *for U* account under the name Paola Hartman associated with her telephone number and email address. *Id.* ¶ 39. The account was created on or about February 10, 2024, through the online portal. *Id.* To create the account, Ms. Hartman would have tapped "Continue" on a screen that stated, immediately below that button, "By creating an account, you acknowledge you . . . have read and agree to our Terms of Use, including understanding that disputes will be arbitrated," with "Terms of Use" hyperlinked to the Terms then in effect. Gupta Decl. ¶¶ 11–12 & Ex. A. The February 2024 Terms contained an arbitration provision at Section 24 and a change-of-terms clause at Section 1. Michael Decl. Ex. E.

The Notice Email was delivered to the email address on Ms. Hartman's account on May 8, 2024, and Albertsons Companies' records reflect that it was opened on May 10, 2024. *Id.* ¶ 22. The first time Ms. Hartman made a purchase after the May 2024 Update using her *for U* account was May 11, 2024. *Id.* ¶ 39. The first time she made a purchase after the May 2025 Update using her *for U* account was May 14, 2025. *Id.* Since the May 2025 Update, she has made over 200 purchases using her *for U* account, including two purchases after the Complaint was filed. *Id.* Albertsons Companies has no record of any arbitration opt-out from Ms. Hartman. *Id.* ¶ 36.

**3. Travis McMichael.**

Albertsons Companies' records reflect a *for U* account under the name Travis McMichael associated with his telephone number. *Id.* ¶ 40. The account was created on December 20, 2023, using Albertsons Companies' in-store enrollment process. *Id.* His enrollment was converted to Albertsons Companies' online enrollment process via Unified Mobile App once he first used his phone number to sign into Albertsons's mobile application on December 24, 2025. *Id.* As part of that process, Mr. McMichael would have entered a "one time password" pushed as a text message to his associated phone

number. *Id.* He would then enter that password on a page that states that entering the password indicates assent to the Terms of Use. *Id.* The "Terms of Use" were also hyperlinked to the Terms then in effect on the sign-up page in the app. Gupta Decl. Ex. A. The December 2023 Terms contained an arbitration provision at Section 24 and a change-of-terms clause at Section 1. Michael Decl. Ex. E.

The first time Mr. McMichael made a purchase after the May 2024 Update using his *for U* account was March 21, 2026. *Id.* ¶ 40. The first time he made a purchase after the May 2025 Update using his *for U* account was March 21, 2026. *Id.* Using his *for U* account, he purchased fuel from Albertsons Companies' fuel centers on September 11, 2024. *Id.* Since the May 2025 Update, he has made fifteen purchases using his *for U* account. *Id.* Albertsons Companies has no record of any arbitration opt-out from Mr. McMichael. *Id.* ¶ 36.

**B. Plaintiffs Filed This Class Action Rather Than Arbitrate.**

Plaintiffs filed this putative class action on June 22, 2026, ECF No. 1, and filed the operative FAC—adding Mr. McMichael (among others) as a plaintiff—on August 21, 2026, ECF No. 91. On October 22, 2026, Albertsons Companies asked Plaintiffs' counsel to stipulate to arbitration of the Member Plaintiffs' claims against Albertsons Companies; Plaintiffs declined.

## III. LEGAL STANDARD

The Federal Arbitration Act provides that a written arbitration provision in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Act "requires courts rigorously to enforce arbitration agreements according to their terms," *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018) (cleaned up), and "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed," *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). The FAA reflects a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

## IV. ARGUMENT

To compel arbitration, a court must decide "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Lim v. TForce Logistics,*

*LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (cleaned up). Where the parties have clearly and unmistakably delegated the second question to the arbitrator, the Court's inquiry ends with the first. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67–69 (2019); *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029–30 (9th Cir. 2022). Here, Member Plaintiffs agreed to arbitrate their claims with Albertsons—delegating all other threshold questions to an arbitrator.

**A. Each Member Plaintiff Formed a Binding Agreement to Arbitrate with Albertsons.**

Courts determine whether the parties agreed to arbitrate by applying state contract law. *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 476 (9th Cir. 2024); *see also Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). If the evidence viewed with all reasonable inferences in plaintiffs' favor leaves no genuine dispute of material fact, the Court compels arbitration. *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) (citing 9 U.S.C. § 4). That is the case here. *See Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017).[2]

Under California law, a contract is formed through mutual assent. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). In the online context, assent manifests where "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." Put differently, "there must be actual or constructive notice" of the offer, "and the parties must manifest mutual assent." *Oberstein*, 60 F.4th at 512–13. Both elements are satisfied for each Member Plaintiff at enrollment and again when each accepted the updated Terms.

**1. Each Member Plaintiff received conspicuous notice of, and affirmatively assented to, the Terms when enrolling in *for U.***

Whether there is assent "turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014). "[T]he conspicuousness and placement of the 'Terms of Use' hyperlink, other notices given to

---

[2] If a genuine dispute of fact exists, the Court should not deny the motion to compel and should instead "proceed without delay to a trial on arbitrability and hold any motion to compel arbitration in abeyance until the factual issues have been resolved." *Hansen*, 1 F.4th at 670 (citing 9 U.S.C. § 4).

users of the terms of use, and the website's general design all contribute to whether a reasonably prudent user would have inquiry notice . . . ." *Id.* The touchstone is whether the notice is "denoted by design elements tailored to notify the reasonably prudent internet user of its presence." *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1156 (9th Cir. 2025). "All that is required is that the text of the notice explicitly alert the user that by . . . proceeding to the next page, the user 'agrees to our Terms of Use." *Oberstein*, 60 F.4th at 517 (cleaned up).

Each Member Plaintiff enrolled in *for U* through Albertsons Companies' app or website, and each in doing so agreed to the hyperlinked Terms of Use—including the conspicuous arbitration provision. Michael Decl. ¶¶ 24–25 & Exs. A, B, E. Mr. McMichael enrolled through the mobile app on December 24, 2023, agreed to Albertsons Companies' standard terms on arbitration and dispute resolution, and assented to updated terms. *See* Ex. E. Ms. Hartman enrolled online on February 10, 2024, agreed to Albertsons Companies' standard terms on arbitration and dispute resolution, and assented to updated terms. *See* Ex. E. Ms. Turnbough enrolled on December 8, 2017, agreed to Albertsons Companies' standard terms and assented to updated terms, and was enrolled online as of May 6, 2024. *See Id.* ¶ 21 & Ex. F. All three agreed to each modification of the terms after their initial enrollment by continuing to use the *for U* program after both the May 2024 and 2025 Updates were announced. *Id.* ¶¶ 29–31 & Exs. A, B, E, F.

The Ninth Circuit has repeatedly held that enrollment flows like Albertsons Companies' provide appropriate notice and that users manifest assent by choosing to proceed through them. For example, in *Oberstein*, the court enforced Ticketmaster's terms where users were "presented with a confirmation button above which text inform[ed] the user that, by clicking on this button, 'you agree to our Terms of Use,'" with the terms available by hyperlink. 60 F.4th at 515–16. In *Keebaugh*, the court reversed the denial of a motion to compel, holding that a mobile-app screen stating "By tapping 'Play' I agree to the Terms of Service" gave reasonably conspicuous notice. 100 F.4th at 1021–22. In *Patrick*, the court enforced terms disclosed at online checkout by a statement that submitting the order constituted agreement to the hyperlinked terms of use. 93 F.4th at 476–77. And in *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 (9th Cir. 2020), the court enforced terms disclosed in text directly below a sign-in button on an uncluttered page. The enrollment screens here share every feature these decisions found

sufficient: the notice appears immediately adjacent to the action button, on an uncluttered screen, in legible type; the hyperlink is set off in a large text box with bolded letters; and the user is told in so many words that the act of creating an account constitutes agreement to the Terms. *See* Gupta Decl. ¶ 12 & Ex. A. *See Berman*, 30 F.4th at 856–57 (notice sufficient where the hyperlink is visually distinguished and the user is "explicitly advised that the act of clicking will constitute assent").

Indeed, a federal court has already enforced Albertsons Companies' arbitration provision where a user signed up on Safeway's mobile app. In *Ehrmantraut v. Safeway, Inc.*, a Safeway *for U* member enrolled through the app but resisted arbitration. 732 F. Supp. 3d 1030, 1033–34 (D. Ariz. 2024). Because the enrollment screens required the member to tap "continue" beneath a statement acknowledging the hyperlinked Terms of Use—which in turn opened with a bolded, capitalized arbitration warning that called for "Attention"—the court held that the member had constructive notice of the arbitration provision and assented to it. *Id.* at 1036–37. Member Plaintiffs clicked through essentially the same screens here and, for the same reasons, assented to arbitration. *See* Gupta Decl. ¶ 12 & Ex. A.

The court's analysis in *Ehrmantraut* faithfully applies the Ninth Circuit's precedent holding that a "full registration process" that contemplates "some sort of continuing relationship" puts users "on notice for a link to the terms of that continuing relationship." *Oberstein*, 60 F.4th at 516–17 (cleaned up); *see Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 925 (N.D. Cal. 2024). As other courts have explained, a consumer who creates such an account—and who is told on the registration screen that doing so is subject to Terms of Use—understands and expects that terms govern the relationship. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78–80 (2d Cir. 2017) (applying California law and enforcing arbitration terms disclosed by hyperlink on an app registration screen). Enrolling in a loyalty program is clearly such a relationship: the member supplies her name, telephone number, and email address precisely so that the retailer can maintain an account for her, track her purchases, and deliver ongoing benefits including fuel discounts. Albertsons Companies' fuel rewards only further confirm that enrollees expect an ongoing relationship, as fuel rewards are earned through purchases at Albertsons Companies' grocery stores. *See* Michael Decl. ¶¶ 7–9.[3]

[3] That Member Plaintiffs may not recall the enrollment screen, or may not have clicked through to read the Terms, is immaterial. "A party cannot avoid the terms of a contract on the ground that he or she

**2. The Member Plaintiffs' assent extends to the May 2024 and May 2025 Terms and their Arbitration Provision.**

Because the Terms Ms. Hartman and Mr. McMichael accepted at enrollment contained an agreement to arbitrate all claims arising from or related to the member's account, use of Albertsons Companies' services, and purchases from Albertsons Companies, Michael Decl. Ex. E, they are bound to arbitrate without regard to any later update. *See Ghazizadeh*, 737 F. Supp. 3d at 933. But the Member Plaintiffs—who were all members well before May 2024—are equally bound by the May 2024 and 2025 Terms, for two reasons.

*First*, the Notice Email gave Ms. Turnbough and Ms. Hartman conspicuous notice of the updated Arbitration Provision, and the Member Plaintiffs acted in the way the Terms expressly define as acceptance. Under California law, "[a] voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting," Cal. Civ. Code § 1589, and "an offeree, knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains," *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 992 (1972). Where, as here, the terms contain "an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound," courts enforce them. *Nguyen*, 763 F.3d at 1177.

The Notice Email establishes acceptance in this manner. It was not a promotional blast—it was a standalone update. Its subject line announced "We've Updated our Terms of Use," its body disclosed that "disputes between us will be arbitrated, instead of class actions or jury trials," and it supplied a prominent "View Terms of Use" button. Michael Decl. ¶¶ 14–17 & Ex. D. Ms. Turnbough and Ms.

---

failed to read it before signing," *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049 (2001), and whether the consumer "actually saw, reviewed, or read" the terms "is not relevant to the question of whether she agreed to them," *Maynez v. Walmart, Inc.*, 479 F. Supp. 3d 890, 898 (C.D. Cal. 2020). Courts in this Circuit routinely reject the contention that a plaintiff's "do not recall" testimony creates a genuine dispute in the face of business records establishing that the plaintiff could not have completed registration without clicking to accept. *See, e.g.*, *Kaplan v. Athletic Media Co.*, 705 F. Supp. 3d 992, 1001–02 (N.D. Cal. 2023). Albertsons Companies' records establish that here. *See* Gupta Decl. ¶¶ 12, Ex. A.

Hartman supplied the addresses the emails were sent to when they created their online accounts. *Id.* ¶¶ 38–39. And Albertsons Companies' records establish clearly that at least Ms. Hartman opened the May 2024 email on May 10, 2024. *Id.* ¶ 22. The updated Terms also stated in their opening lines, as did previous versions, that they contain a mandatory arbitration provision and that "continued access to or use of your Account or the Services constitutes your acceptance of the current Terms," and they gave each member 30 days after her next purchase to opt out. *Id.* Ex. A at 2. Each Member Plaintiff thereafter used her or his account to make at least 15 purchases from an Albertsons Companies' store after the Notice Email was sent, and none opted out. *Id.* ¶¶ 36, 38–40.

*Second*, the Terms the Member Plaintiffs accepted at enrollment expressly reserved Albertsons Companies' right to modify them and provided that modifications would be effective upon posting and that continued use of the account or services after a modification constitutes acceptance. Michael Decl. ¶¶ 29–31 & Exs. E, F. Having agreed to that mechanism, the Member Plaintiffs are bound by updated Terms of which they received notice. Courts in this Circuit enforce updated arbitration provisions in precisely these circumstances. In *Ghazizadeh*, for example, the court compelled arbitration under updated terms where the plaintiff's original sign-up incorporated terms containing a change-of-terms clause and the defendant emailed notice of the update—just as Albertsons Companies did here. 737 F. Supp. 3d at 933; *see also Sadlock v. Walt Disney Co.*, 2023 WL 4869245, at *12–13 (N.D. Cal. July 31, 2023) (enforcing arbitration provision where company "provided reasonably conspicuous notice" by emailing an update adding an arbitration provision and the plaintiff continuing to use the service after receiving the email); *In re Uber Techs., Inc.*, 2019 WL 6317770, at *4 (C.D. Cal. Aug. 19, 2019) (similar); *West v. Uber Techs., Inc.*, 2018 WL 5848903, at *5 (C.D. Cal. Sept. 5, 2018) (similar); *Babaeva v. J. Crew Grp., LLC*, 2023 WL 7346079, at *2 (N.D. Cal. Nov. 6, 2023) (similar).

**3. *Tempest* and *Sapan* do not counsel a different result.**

Two cases in which courts have declined to compel arbitration at an early stage—*Tempest v. Safeway, Inc.*, 2025 WL 1953465 (N.D. Cal. July 16, 2025) and *Sapan v. Safeway, Inc.*, 2025 WL 2494275 (N.D. Cal. Aug. 29, 2025)—do not control here. In each, the court concluded that specific evidence demonstrating the plaintiffs agreed to the Terms of Use were absent. But here, Albertsons Companies has offered evidence establishing those facts.

**a.** In *Tempest*, Safeway moved to compel arbitration against a putative class of wine purchasers who claimed its "member only" prices for wine were false discounts. 2025 WL 1953465, at *1. The plaintiffs became members at various times from 2009 to 2021, and all became members in-store without becoming members online. *Id.* at *3, *5. The court denied the motion to compel arbitration, citing lack of record evidence rather than any defect in the arbitration provisions themselves. *Id.* at *3.

The *Tempest* decision turned on four specific deficiencies in the record. First, the court found Safeway offered "no evidence as to how Plaintiffs signed up for Safeway Rewards, including evidence as to what were the terms of use, if any, they agreed to at that time" because the only agreement in the record was from 2024 and the plaintiffs had enrolled "in person at Safeway stores" between 2009 and 2021. 2025 WL 1953465, at *4–5. Second, there was a "discrepancy between in-person sign-up and email notice." *Id.* at *6. Third, the court concluded cases about online enrollment were "wholly inapposite" because the plaintiffs "were not visiting a website and so cannot be charged with constructive notice of a website's content." *Id.* at *5. Fourth, the court found "undisputed" evidence that no plaintiff knew of the email notifying them about arbitration before his or her first post-update purchase. *Id.* at *4.

In every aspect, this case is different. Albertsons Companies' records demonstrate that each Member Plaintiff was required to enroll through a terms-gated digital flow, Gupta Decl. ¶¶ 12 & Ex. A, and the record includes both the Terms in force on the date of each's enrollment as well as those now in effect. Michael Decl. Exs. A, B, E & F. The record also includes undisputed evidence that at least Ms. Hartman opened the Notice Email. Michael Decl. ¶¶ 22. Nor is there any mismatch between in-person sign-up and email notice here—all Member Plaintiffs created an online or mobile app account. *Id.* ¶¶ 38–40. And each member created an online or mobile account, so cases about online enrollment are directly relevant. *See id.* As a result, this case falls outside the specific circumstances to which the *Tempest* court carefully limited its ruling. *See* 2025 WL 1953465, at *6 (limiting its decision to circumstances in which notice was provided by email "of which the consumer is unaware," after they had enrolled in person, and to which decisions enforcing emailed updates plaintiffs may not have applied).

**b.** *Sapan* is farther afield. There, the plaintiff denied ever enrolling in Safeway's pharmacy text-

messaging program, which the court found created a genuine dispute about formation. 2025 WL 2494275, at *5. In addition, Safeway relied on continued use of a program whose terms did not state that continued use would constitute acceptance and that never prompted an affirmative act of assent. *Id*. Here, Albertsons' records tie each account to the Member Plaintiff's own name, telephone number, and (other than Mr. McMichael) email address, reflect years of use of that account, and show that each Member Plaintiff affirmatively accepted the Terms by signing in to the online site or mobile app. Michael Decl. ¶¶ 38–40. And, unlike *Sapan*, the Terms here say explicitly that continued use constitutes acceptance. *Id.* 29–31 & Exs. A, B, E, F.

**B. The Arbitrator Must Decide Any Remaining Threshold Questions.**

Plaintiffs' claims fall within the broad scope of the applicable arbitration provision. To the extent Plaintiffs dispute as much, that question is for an arbitrator to decide in the first instance. Regardless, it is beyond reasonable dispute that this case is arbitrable under the Terms of Use.

**1.** Parties "may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,'" and where they have done so clearly and unmistakably, "a court may not override the contract," even if it "thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein*, 586 U.S. at 65, 68; *see Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010). The Arbitration Provision delegates arbitrability clearly and unmistakably.

Three provisions work in concert to create a clear and unmistakable delegation of arbitrability. First, the Terms are clear that "These Dispute Resolution Terms apply to all Claims between you and the Company," where "[a] 'Claim' is any dispute, claim, cause of action, or controversy . . . that arises from or relates to . . . the arbitrability, validity, enforceability, or scope of these Terms or any portion of them." Michael Decl. Ex. B at 38–39. Second, the Terms of Use specify that arbitration will be conducted by the AAA under its Consumer Arbitration Rules for all consumers—which include a delegation of arbitrability. *Id.* at 41–42. Third, the Arbitration Provision also grants "the arbitrator" the "exclusive authority to make all procedural and substantive decisions regarding any Claim in arbitration and to grant any remedy or relief that would be available in a court under law or in equity, including the power to determine all questions of arbitrability." *Id.*

Any one of these provisions is a clear and unmistakable commitment of arbitrability to an arbitrator. For example, the Ninth Circuit has held that even mere "[i]ncorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *see Patrick*, 93 F.4th at 480–81 (applying rule to consumer agreement); *Caremark*, 43 F.4th at 1029–30 (similar). That such an incorporation is paired here with two express provisions that empower the arbitrator with exclusive authority to decide arbitrability suffices *a fortiori*. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208–09 (9th Cir. 2016).

**2.** Even if the Court were to decide the scope of the Arbitration Provision itself, the result would be the same. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983), and a motion to compel must be granted unless "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (cleaned up). Clauses reaching claims "arising from or related to" an agreement or relationship are construed broadly to reach any dispute having "a significant relationship" to the contract or that "touch[es] matters" covered by it. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999).

The Arbitration Provision uses those precise words. It covers "all claims arising from or related to your account, access to or use of the Company's services, purchases from the Company, . . . [and] any aspect of your relationship or interactions with the Company." Michael Decl. Ex. B at 17. The Member Plaintiffs' claims against Albertsons fall within each of those categories. They allege that Albertsons Companies, including Safeway, as retail sellers of gasoline in California, charged supracompetitive prices for fuel. FAC ¶¶ 8, 77, 152. Each Member Plaintiff purchased fuel from Albertsons Companies, using her or his *for U* account. Michael Decl. ¶¶ 38–40. A claim that Albertsons Companies overcharged a member for fuel she bought from Albertsons Companies through her account is a claim "arising from or related to" her "purchases from the Company" and her "account." And because the price a member pays at an Albertsons Companies pump is itself a function of the *for U* program—the account determines the per-gallon discount applied—the claims "relate to" the member's "use of the Company's services" and her "relationship or interactions with the Company" in the most

direct sense. It cannot be said "with positive assurance" that the Arbitration Provision does not reach them.

Even apart from fuel purchases, the Member Plaintiffs' claims "relate to" "any aspect of [their] relationship or interactions with the Company." Ex. B § 24. A claim seeking to hold a retailer liable for the prices it charged in the same market in which the plaintiff dealt with that retailer as a member is, at minimum, "susceptible of an interpretation" that it relates to the plaintiff's relationship with that retailer, which is all the FAA requires. *AT&T Techs.*, 475 U.S. at 650. Further, each Member Plaintiff has been an Albertsons Companies customer and *for U* member for years and made a significant number of purchases from Albertsons Companies during the alleged class period. Michael Decl. ¶¶ 38–40. And each seeks to represent a class of similarly positioned people that purchased fuel from Albertsons Companies or Safeway, putting many more purchases governed by the agreement at issue. FAC ¶¶ 163–64.

The Ninth Circuit's decision in *Johnson v. Walmart Inc.*, 57 F.4th 677 (9th Cir. 2023), confirms rather than undermine that conclusion. *Johnson* held that Walmart's website terms, which governed *only* use of the Walmart.com website, did not reach a dispute over a separate in-store contract for tire services. 57 F.4th at 680–82. Here, the Terms by their text govern not merely a website but the member's "Account," her "access to and use of all the Company stores"—defined to include affiliates—and her use of Albertsons Companies' "Services," which include its stores and fuel centers. Michael Decl. Ex. B at 2. A reasonable *for U* member who buys fuel from Albertsons Companies using her *for U* account would expect a dispute over the price of that fuel to be a dispute "related to" her purchases from, and relationship with, Albertsons Companies. *Id.*; *cf. Adibzadeh v. Best Buy Co.*, 2021 WL 4440313, at *1, 6 (N.D. Cal. Mar. 2, 2021) (online terms reached claims concerning in-store purchases).

**C. The Arbitration Provision Is Valid and Enforceable.**

Plaintiffs cannot evade arbitration by claiming the provisions are unconscionable. At the outset, any such claim is committed to the arbitrator. *See supra* Section IV.B (explaining "These Dispute Resolution Terms apply to . . . enforceability, or scope of these Terms or any portion of them"). But even if this Court considers such an argument, Member Plaintiffs cannot meet their burden of showing, as

they must, that the arbitration agreement is both procedurally and substantively unconscionable. *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012).

Procedural unconscionability attaches to "a contract of adhesion" or when there are "other indicia of procedural unconscionability." *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002). But "an arbitration agreement is not adhesive if there is an opportunity to opt out of it." *Mohamed*, 848 F.3d at 1211; *see Rubio v. Aarons LLC*, 2024 WL 4904512, at *6 (E.D. Cal. Nov. 27, 2024). Member Plaintiffs had *multiple* opportunities to opt out here. *See* Michael Decl. Ex. B at 45. Nor was the agreement a surprise: the arbitration term is announced in bold capital letters at the very top of the Terms, Michael Decl. Exs. A at 2, B at 2, E at 2, even though Albertsons Companies had "no obligation to highlight the arbitration clause of its contract" at all, *Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 914 (2015) (holding such a requirement would be "preempted by the FAA"). An agreement cannot be called oppressive when Member Plaintiffs were free to choose among many other free programs from fuel retailers and grocers. *Cf. Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 684–89 (9th Cir. 2024) (finding oppression where consumers had no practical alternative).

The Arbitration Provision is also substantively fair. Agreements to arbitrate are substantively unconscionable only when they deliver "overly harsh or one-sided results." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1023 (9th Cir. 2016). Here, the agreement binds Albertsons Companies and the member alike—without creating unilateral obligations on Member Plaintiffs. For example, it adopts the AAA's consumer rules administered by a neutral arbitrator, requires Albertsons Companies to pay arbitration filing fees above the cost of filing suit, permits the arbitrator to award any individual legal or equitable remedy, and its informal-resolution requirement applies equally to both sides. Michael Decl. Ex. B at 41. *See Tompkins*, 840 F.3d at 1030–31. Its fee-shifting term reaches only frivolous claims or claims brought for an improper purpose, and even then only "to the extent permitted by applicable law," Michael Decl. Ex. B at 42, which the California Supreme Court has endorsed. *See Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 507–09 (2024). And the Terms provide that any provision found unenforceable shall be severed, Michael Decl. Ex. B at 45, which California law favors where, as here, an agreement is not "permeated" by unconscionability, *Armendariz v. Found. Health Psychcare Servs.*, 24 Cal. 4th 83, 124 (2000).

## V. CONCLUSION

Where a court determines that a dispute is referable to arbitration, it must compel the dispute to proceed to arbitration and "stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3; *see also Smith v. Spizzirri*, 601 U.S. 472, 475–78 (2024). Accordingly, Albertsons Companies respectfully requests that the Court compel Plaintiffs Crystal Turnbough, Paola Hartman, and Travis McMichael to arbitrate their claims against Albertsons Companies on an individual basis and stay those claims pending completion of arbitration or, in the alternative, set a prompt trial under 9 U.S.C. § 4 of any genuinely disputed question of formation. Albertsons Companies respectfully requests that the Court reach such a decision before ruling on the subsequently filed motion to dismiss Member Plaintiffs' claims. *Smith*, 601 U.S. at 475–78.

Dated: October 23, 2026

Respectfully submitted,

/s/ *Theane Evangelis*

**GIBSON, DUNN & CRUTCHER LLP**
THEANE EVANGELIS, SBN 243570
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:213.229.7000
Facsimile: 213.229.7420
TEvangelis@gibsondunn.com

BENJAMIN WAGNER, SBN 163581
310 University Avenue
Palo Alto, CA 94301-1744
Telephone:650.849.5395
Facsimile: 650.849.5095
BWagner@gibsondunn.com

RACHEL S. BRASS, SBN 219301
JULIAN W. KLEINBRODT, SBN 302085
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone:415.393.8293
Facsimile: 415.393.8306
RBrass@gibsondunn.com
JKleinbrodt@gibsondunn.com

*Attorneys for Defendant Albertsons Companies, Inc. and Albertsons Safeway LLC*